Rene L. Valladares
Federal Public Defender
Nevada Bar No. 11479
Randolph M. Fiedler
Assistant Federal Public Defender
Nevada Bar No. 12577
Randolph_fiedler@fd.org
Stacy Newman
Assistant Federal Public Defender
Nevada State Bar No. 14245
Stacy_newman@fd.org
T. Kenneth Lee
Assistant Federal Public Defender
Ohio Bar No. 65158
Ken_Lee@fd.org
411 E. Bonneville Ave., Ste. 250
Las Vegas, NV 89101
(702) 388-6577
(702) 388-5819 (fax)

Attorneys for Petitioner

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Kentrell D. Welch,

Petitioner,

v.

Liggett, *et al.*,

Respondents.

Case No. 2:19-cv-01243-APG-NJK

**Motion for Meaningful Access to Mr. Welch**

## I. Introduction

Kentrell Welch is incarcerated at Ely State Prison. Because of a physical disability, he must walk with a cane. This physical disability should not "diminish [his] right to fully participate in all aspects of society," yet his disability has "precluded" him from meaningful access to counsel—in both his 42 U.S.C. § 1983 and 28 U.S.C. § 2254 cases—because the prison insists that Mr. Welch's walking cane be accompanied by leg restraints. *See* 42 U.S.C. § 12101(a)(1). Because Mr. Welch's need for a walking cane should not bar him from visiting with counsel or having scheduled legal calls, Mr. Welch asks this Court to order the Nevada Department of Corrections (NDOC) to transport him to legal visits or scheduled legal phone calls without leg restraints. [1]

## II. Factual Background

Mr. Welch is currently pursuing a habeas petition challenging a state court conviction and a civil rights suit relating to his imprisonment in the Nevada Department of Corrections. This Court appointed the Federal Public Defender of Nevada as counsel for Mr. Welch in both cases. *See Welch v. Williams*, Case No. 2:19-cv-00193-RFB-VCF, ECF No. 45 at 2 (appointing counsel in the habeas case); *Welch v. Liggett*, Case No. 2:19-cv-01243-APG-NJK, ECF No. 78 at 2 (appointing counsel in the civil rights case).

Around December of 2021, Mr. Welch asked to be moved to a more secure unit at Ely State Prison because he felt unsafe and threatened by other inmates.

---

[1] Because these issues accessing Mr. Welch affect both cases, counsel has filed this instant motion in both.

Ex. 1. The prison moved Mr. Welch but began subjecting him to more intense shackling. Ex. 2. Before the move, Mr. Welch was not subjected to leg shackles, but after the move, the prison began shackling Mr. Welch's legs any time he left his cell. *Id.*

Mr. Welch objected to the use of leg shackles because he suffers from rheumatoid arthritis, which requires that he walk with a cane. Ely State Prison responded that because Mr. Welch was now located in a more secure unit, he would be subjected to the additional shackles as a matter of course. As a result, Mr. Welch has not left his cell for scheduled legal calls[2] or in-person legal visits with his attorneys for the past two months.

### A. Mr. Welch is disabled and has difficulty walking, a condition of which Ely State Prison is aware.

Rheumatoid arthritis (RA) is a long-term autoimmune disease that causes inflammation and damage to the joints. *See Rheumatoid Arthritis*, Drugs.com (Jan. 5, 2022), https://www.drugs.com/cg/rheumatoid-arthritis-ambulatory-care.html Ex. 3. Symptoms include joint pain and stiffness, loss of joint movement, the growth of round nodules on joints, fatigue or muscle weakness, and loss of appetite and weight loss. *Id.* These symptoms can range from mild to severe. *See* WebMD, *Progression and Stages of Rheumatoid Arthritis*, https://www.webmd.com/rheumatoid-arthritis/ra-progression (reviewed by Michael

---

[2] Mr. Welch has had periodic access to the phone to call counsel, but as will be explained more below, these less-formal calls are subject to interruption at 12–14 minute intervals and occur in his cell, where he is not guaranteed privacy from other inmates or guards.

W. Smith, MD Oct. 19, 2020) Ex. 4. In the severe stage, inflammation wears away at cartilage and leads to bone erosion, unstable joints, and even possible deformities. *Id.*

There are several ways to manage RA, such as taking arthritis medicines, eating a variety of healthy foods, maintaining a healthy weight, and getting physical or occupation therapy. *Id.* Support devices, such as orthotic shoes, insoles, walkers or canes can help decrease risk of falling and decrease the amount of stress on the affected joints. *Id.* However, as noted in an Editorial in the Lancet's Rheumatology Journal, managing RA in prison can be difficult due to restrictions on exercise, difficulties maintaining access to canes or walkers, advanced physiological aging, and a lack of specialized rheumatology services and appropriate medication. *See Editorial: Rheumatology care in prisons: cruel and unusual punishment?*, The Lancet Rheumatology (Dec. 2020) Ex. 5.

RA can have significant impacts on sufferers' everyday lives and can therefore qualify as a disability under the American with Disabilities Act. *See* 42 U.S.C. § 12102 (defining a disability as a "physical or mental impairment that substantially limits one or more major life activities" such as, among other things "performing manual tasks . . .walking . . . .").[3]

Ever since Mr. Welch arrived at Ely State Prison, the prison has acknowledged that Mr. Welch suffers from RA and needs a cane in numerous

---

[3] The Nevada Department of Corrections has adopted this understanding of a disability and recognized the ADA's application to its facilities in Administrative Regulation 658. *See* Exhibit 13.

medical records. For example, in "new intake" notes generated at Ely State Prison in August of 2020, a nurse wrote that Mr. Welch had RA and that his gait was "slow – purposeful – cane to assist – appears older than his stated yrs – 'beaten down' impression." *See* Ex. 6. In April of 2021, the prison approved Mr. Welch to keep his "cane for ambulation R/T rheumatoid arthritis x 90 days. *See* Ex. 7."[4] As recently as June of 2021, a "Health Classification and Restrictions" form generated by the prison noted that Mr. Welch had limited mobility, needed to be assigned to a facility with the healthcare capacity to treat limiting conditions, that his work/program assignments would be limited, and that Mr. welch needed to be assigned to a lower floor and lower bunk. *See* Ex. 8. This same form even recommended that "If qualifies recommend transfer to [High Dessert State Prison] for followup & rheumatology R/T RA." *Id.* Similarly, Nurse Martin met with Mr. Welch in June of 2021 and observed that Mr. Welch had a "slow antalgic gait using cane for assistance with ambulation. Mild difficulty climbing onto/off of exam table." *See* Ex. 9.

Thus, officials at Ely State Prison are aware that Mr. Welch has RA that causes him mobility difficulties, which requires him to use a cane to walk.

---

[4] Mr. Welch notes that under the Nevada Department of Corrections Administrative Regulation 603.01(2), medical devices such as canes are only to be approved for "inmates who have a proven medical condition for which there is medical evidence which supports the use of such device as being necessary to prevent or treat a serious medical condition, or which is proven necessary for the performance of the required activities in the correctional institutional environment."

### B. After Mr. Welch asked to be moved to a more secure unit for his safety, Ely State Prison began subjecting Mr. Welch to leg shackling.

Around December of 2021, Mr. Welch asked to be moved to a more secure unit in Ely State Prison because he felt unsafe and threatened by other inmates. See Ex. 1. The prison moved Mr. Welch to a maximum-security unit. *Id.*

On December 1, Mr. Welch contacted his counsel and informed counsel that the prison was now subjecting him to leg shackling. Mr. Welch was never subjected to leg shackles before and did not feel safe moving around in them because he has RA and needs a cane to walk. Mr. Welch informed counsel that he would not leave his cell for legal calls or legal visits if he was forced to walk in leg shackles.

### C. Informal efforts to resolve this issue with Ely State Prison have failed.

Mr. Welch's §1983 counsel attempted to informally resolve this issue with opposing counsel. After counsel's initial attempt to get more information about the situation, Associate Warden (AW) Drummond stated that "per ESP policy any movement outside the cell for maximum security inmates requires full restraints consisting of wrist restraints and leg restraints." *See* Ex. 1. AW Drummond also stated that he "checked NOTIS for any medical restrictions and I did not find a need for a cane." *Id.*

In subsequent communications, AW Drummond indicated that he did find a medical order for a cane for Mr. Welch which expired on 1/5/2022, but because that order did not "indicate that he cannot comply with ankle restraints," Mr. Welch would be subjected to belly chains and leg restraints. Ex. 2.

Following this, Mr. Welch's §1983 counsel contacted Nurse Michelle Perkins to see if there was any documentation addressing Mr. Welch's ability to comply with leg restraints. *See* Ex. 10. In response, Nurse Perkins referenced the cane lay-in order and that there was nothing in Mr. Welch's file that said he could not comply with leg restraints. *Id.* However, Mr. Welch's §1983 counsel was unable to definitively confirm whether such an assessment has ever taken place.

After experiencing more visiting difficulties,[5] Mr. Welch's § 1983 counsel again reached out to opposing counsel about difficulties accessing Mr. Welch. In response, AW Drummond said that "[m]yself and Warden Reubart agree that if the inmate does not have a medical reason for not to [sic] wear leg restraints we will continue with our security policy and place the inmate in leg restraints. If he does not comply with the restraints then he will not be authorized out of the cell as this is a security risk to my staff and other inmates at ESP." Ex. 11.

Upon receiving this communication, Mr. Welch's § 1983 counsel have concluded that further informal efforts at resolving this issue will be unavailing, and informed opposing counsel that this matter would be brought before this Court.

### D. Ely State Prison's decision to shackle Mr. Welch has significantly impacted his ability to confer with both his civil rights counsel and habeas counsel.

Since Mr. Welch has been subjected to the additional shackling, Mr. Welch has been unable to meet with counsel in person or have a formal legal call.

---

[5] These will be discussed more fully in the next section.

Although cordless phones are often passed around to inmates at Ely State Prison, and Mr. Welch has occasionally utilized them to call counsel, access is unreliable and anything said is within earshot of other inmates and/or correctional staff. Additionally, phone calls are automatically ended after fifteen minutes. If an inmate attempts to hold onto the phone past the fifteen minutes, it can cause disruption amongst the unit as other inmates are also waiting to use the phone.

Since Ely State Prison began shackling Mr. Welch's legs, Mr. Welch did not come out for a scheduled legal call with his § 1983 counsel on December 6, 2021. Counsel has not attempted to schedule another call until this situation is resolved. Additionally, Mr. Welch's § 2254 attorney attempted to visit Mr. Welch in person on January 14, 2021. Ex. 11. The day before the visit, counsel in Mr. Welch's § 2254 action had spoken to Nurse Perkins, who had advised that Mr. Welch would be taken to visiting without leg shackles. *Id.* However, on the 14th, after driving four hours to the prison, Mr. Welch's § 2254 attorney was told Mr. Welch was refusing the visit because Mr. Welch refused to be moved with leg shackles. *Id.*

Mr. Welch's § 1983 counsel notes that discovery is ongoing in his civil rights case, and that the parties are less than two months away from the dispositive motion deadline. In Mr. Welch's § 2254 federal habeas action, counsel needs to meet with Mr. Welch in-person to go over legal documents, to discuss the risks and benefits of going forward, and other legal issues. Without such an in-person meeting, with the ability to go over legal documents, Mr. Welch and § 2254 counsel would be unable to comply with this Court's order to "ensure due process" and to "fairly present" his claims to this Court. *See Welch v. Williams*, Case No. 2:19-cv-

00193-RFB-VCF, ECF No. 45 at 2. As a result of this situation, counsel has not had the benefit of scheduled, private calls that do not get cut off after 15 minutes, nor the benefit of in-person private visits.

## III. Argument

There are various vehicles a court can use to enforce an inmate litigant's access to attorney visits. Pursuing civil rights litigation is one way. *See, e.g.*, *Ching v. Lewis*, 895 F.2d 608, 609 (9th Cir. 1990). But a court also has authority under the All Writs Act to order a prison to accommodate an inmate's right of access to the courts. *See, e.g.*, *Lopez v. Cook*, No. 2:03-CV-1605-KJM-DAD, 2014 WL 1488518, at *3 (E.D. Cal. Apr. 15, 2014). A court also has the inherent authority to control its own proceedings, which includes the authority to regulate attorney-client access. *See United States v. Mikhel*, 552 F.3d 961, 963 (9th Cir. 2009) (discussing the circuit courts' inherent authority, as well as their authority under Federal Rule of Appellate Procedure 47(b)); *see also* Fed R. Civ. P. 83(b) (the district courts' analogue to appellate Rule 47(b)).

Moreover, several Ely State Prison officials in control of Mr. Welch's custody, such as AW Drummond and Warden Reubart, are already subjected to this Court's jurisdiction, in both the civil rights case and the habeas case. Thus, this Court has legal authorization and the ability to ensure the prison provides Mr. Welch and his counsel reasonable accommodations, both to protect his right to access his counsel and the courts and to ensure his physical disabilities are not being used against him.

### A. Ely State Prison's recent decision to subject Mr. Welch to additional shackling is unreasonable and is impacting Mr. Welch's access to counsel.

Prison inmates have a constitutionally protected right to access the courts to bring challenges to their criminal convictions and to the conditions of their confinement. *Lewis v. Casey*, 518 U.S. 343, 354–55 (1996); *Ching*, 895 F.2d at 609. And "[t]he opportunity to communicate privately with an attorney"—including through "contact visitation"—"is an important part of [] meaningful access." *Ching*, 895 F.2d at 609–10. *Campbell v. Wood*, 18 F.3d 662, 678 (9th Cir. 1994) (holding that regardless of whether someone has the right to counsel at habeas proceeding, "counsel, once appointed, was entitled to a fair chance to represent his client."); *Weatherford v. Bursey*, 429 U.S. 545, 554 n.4 (1977) (noting that the government conceded that "the Sixth Amendment's assistance-of-counsel guarantee can be meaningfully implemented only if a criminal defendant knows that his communications with his attorney are private" (citation omitted)); *Coplon v. United States*, 191 F.2d 749, 758 (D.C. Cir. 1951) (stating that the "right of an accused, confined in jail . . . , to have an opportunity to consult freely with his counsel without any third person, . . . is one of the fundamental rights guaranteed by the American criminal law");

Thus, if a prison unreasonably restricts attorney-client contact visitation without "any justification to support their decision," the prison violates an inmate's constitutional rights. *Id.* at 610; *see also, e.g.*, *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994).

The reasonableness of a prison's restrictions depends on four factors: "(1) whether there is a valid, rational connection between the prison policy and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right; (3) the impact that accommodation of the constitutional right will have on guards, or other inmates, or the allocation of prison resources; and (4) whether the regulation or policy is an 'exaggerated response' to prison concerns." *Casey v. Lewis*, 4 F.3d 1516, 1520 (9th Cir. 1993); *see also, e.g.*, *United States v. Mikhel*, 552 F.3d 961, 963 (9th Cir. 2009); *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008) (applying this four-part test in another context).

Here, Ely State Prison's insistence on using leg shackles on Mr. Welch is not reasonable under the circumstances. Although counsel in both Mr. Welch's § 1983 and § 2254 actions do not deny there is a valid rational connection between using leg shackles and the safety and security of the institution generally, those concerns should yield in this situation. As far as Mr. Welch is aware, there are no alternative means of ensuring Mr. Welch's right to in-person visitation with his counsel or scheduled legal calls that do not involve him leaving his cell. Mr. Welch was not previously being subjected to leg shackles when leaving his cell, and the prison has never argued that the decision to put him in leg shackles had anything to do with any proclivity for violence or disruption on his part. Further, the impact of not shackling Mr. Welch's legs on guards, or the allocation of prison resources will be insignificant, as evidenced by how long Mr. Welch was transported without leg shackles.

Moreover, it is unreasonable for prison officials to rely on a lack of medical assessment as proof that Mr. Welch can comply with leg shackles. In correspondence, it appears AW Drummond is referring to a medical lay-in order for a cane to support that Mr. Welch can medically comply with leg shackles. Ex. 2; Ex. 11. But this document simply indicates what kind of device an inmate is allowed to possess. See Ex. 7. And because Mr. Welch only recently began being subjected to leg shackles, there would have been no reason for prison medical staff to address his ability to comply with leg shackles. Thus, to the extent the prison is attempting to rely on this lay-in order as a medical assessment of some kind it should not be considered controlling by this Court. This document does not say whether Mr. Welch can comply with ankle restraints, and other medical documents strongly suggest that he cannot. *See* Ex. 6; Ex. 7; Ex. 8; Ex. 9.

Given the totality of the facts, Ely State Prison's decision to shackle the legs of an inmate with RA who requires a cane to walk simply because he moved units is an exaggerated response to the prison's concerns about safety. Thus, this Court should order that the prison revert to its previous practice of subjecting Mr. Welch to arm restraints and belly chains only, so that he can safely walk with his cane and have meaningful access to counsel.

**B. Mr. Welch's sought accommodation for his disability is reasonable.**

Title II of the Americans with Disabilities Act of 1990 (ADA), 104 Stat. 337, 42 U.S.C. § 12131 et seq., prohibits a "public entity" from discriminating against a "qualified individual with a disability" on account of that individual's disability.

State prisons are unquestionably subjected to the ADA and may not deny any inmate access to a service, program or activity based on a disability. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208 (1998); *Pierce v. Cty. of Orange*, 526 F.3d 1190, 1214 (9th Cir. 2008); Exhibit 13.

Generally, prisons must "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the [prison] can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7); *McGary v. City of Portland*, 386 F.3d 1259, 1265–67 (9th Cir.2004).

Here, Mr. Welch's RA should be considered a disability because it substantially limits Mr. Welch's mobility. *See* 42 U.S.C. § 12102 (defining a disability under the ADA as a "physical or mental impairment that substantially limits one mor more major life activities" such as, among other things "performing manual tasks . . .walking . . . ."). As noted in numerous prison documents, Mr. Welch has an altered gait from his RA, and requires a cane to walk. Ex. 6; Ex.7; Ex.9; Ex. 12.

Given this disability, Ely State Prison should make a reasonable accommodation so that Mr. Welch is not deprived of his access to counsel on the basis of his disability. Reverting to its previous practice of only shackling Mr. Welch's arms would be reasonable, along with belly chains, as they were previously doing it without incident, and because such an accommodation would not fundamentally alter the nature of the service, program, or activity.

## IV. Conclusion

Mr. Welch should not have to choose between meaningful access to counsel and subjecting himself to physical pain and danger. Given the above, this Court should order Ely State Prison to reasonably accommodate Mr. Welch by reverting to the way they were previously moving him out of his cell, without leg shackles.

Dated this 21st day of January, 2022.

Respectfully submitted,

Rene L. Valladares
Federal Public Defender

*/s/ Randolph M. Fiedler*
Randolph M. Fiedler
Assistant Federal Public Defender

*/s/ Stacy Newman*
Stacy Newman
Assistant Federal Public Defender