UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Kentrell D. Welch,<br><br>               Plaintiff<br><br>v.<br><br>Gavin Liggett, et al.,<br><br>               Defendants | Case No. 2:19-cv-01243-CDS-NJK<br><br>**Order Granting Defendants' Motion for Summary Judgment, Vacating the Order Granting Injunctive Relief, and Denying as Moot Defendants' Motion for Reconsideration**<br><br>[ECF Nos. 129, 139] |

      Plaintiff Kentrell D. Welch, an inmate incarcerated in the Nevada Department of Corrections (NDOC), sues defendant Gavin Liggett for retaliating against him in violation of the First Amendment and defendants Liggett, Jordan Gunderson, Keith McKeehan, and James Larry Wuest for failing to protect Welch in violation of the Eighth Amendment.[1] *See generally* Am. Compl., ECF No. 28. Defendants now collectively move for summary judgment, arguing that Welch has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), Welch's claims cannot survive summary judgment, and defendants are entitled to qualified immunity. *See generally* Def's Mot. Summ. J., ECF No. 129. I find that Welch indeed failed to exhaust the administrative remedies that were available to him and therefore grant defendants' motion for summary judgment. I also dissolve the injunctive relief I previously ordered (ECF No. 135), aimed at preserving Welch's right to meet with his legal counsel. Finally, I deny as moot defendants' motion for reconsideration concerning the injunction order. ECF No. 139.

---

[1] Defendant Keith McKeehan's name is erroneously listed as "McKeechan" in the case caption and various pleadings. ECF No. 129 at 1 n.1.

I.      Relevant Background Information

  *a. Procedural History*

Welch brings this lawsuit under 42 U.S.C. § 1983, seeking relief from events that allegedly occurred while he was incarcerated at High Desert State Prison (HSDP) between June 2019 and the present. *See generally* Am. Compl., ECF No. 28. He initially filed as an unrepresented pro se petitioner, and this court granted him leave to proceed *in forma pauperis* on November 24, 2020. *See generally* Order, ECF No. 56. Welch later moved for appointment of counsel because he was adjudicated incompetent, and he alleged that he could not properly prosecute the case without representation. *See generally* Mot., ECF No. 41. This court granted Welch's motion, appointed the Federal Public Defender to represent him, and found that the instant action "constitute[d] an ancillary matter sufficiently related to his underlying criminal case." Order, ECF No. 78. Welch's criminal case is the federal habeas action he brought in this district, challenging the validity of the state-court conviction which underlies his incarceration.[2] *See generally Welch v. Williams*, Case No. 2:19-cv-00193-RFB-VCF (D. Nev. Feb. 1, 2019).

In January 2022, Welch filed a motion for meaningful access to his counsel in both the habeas case and the present matter, contending that he was unable to confer with counsel because a prison policy requiring inmates to wear leg shackles when outside of their cells caused him severe pain due to his rheumatoid arthritis. Mot., ECF No. 107; *see also* Mot., *Welch v. Williams*, ECF No. 62. The Office of the Attorney General, representing both the instant defendants and those in the habeas case, argued that this case was the proper forum in which to litigate Welch's meaningful-access motion. *See* Resp., *Welch v. Williams*, ECF No. 67 ("Respondents maintain that it would be more appropriate for the parties in [the § 1983] matter to continue to . . . litigate whether the proposed accommodations are reasonable (or necessary), rather than this [c]ourt intervening at this time.").

---

[2] Federal courts "may take notice of proceedings in other courts, within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex. rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (internal quotation marks and citation omitted).

The Honorable United States Magistrate Judge Nancy J. Koppe considered Welch's motion in the instant action, granted it, and issued his requested relief prohibiting NDOC from shackling Welch's legs during transportation for legal visitation or legal phone calls. *See generally* Order, ECF No. 124. Defendants appealed the magistrate judge's ruling. ECF No. 125. I granted defendants' appeal, finding that the magistrate judge lacked the authority to issue injunctive relief, but I extended the injunction because of my concern that Welch's inability to contact his counsel could abridge his right to counsel in the habeas context. ECF No. 135. The habeas court adopted my reasoning and granted Welch the same relief. Order, *Welch v. Williams*, ECF No. 76.

Defendants now move for reconsideration of my order granting Welch meaningful access to his counsel. ECF No. 139. They also move for summary judgment on both of Welch's surviving causes of action. ECF No. 129. Welch opposes both motions. Resp. Mot. Reconsideration, ECF No. 144; Resp. Mot. Summ. J., ECF No. 146; Exhibits to Resp., ECF No. 147.

    b. *Statement of Undisputed Facts*

        i. *Underlying Events*

On May 13, 2019, Welch fought with a fellow prisoner at HDSP, whom Welch describes as a "Southsider," or a "Sureno" gang member. ECF No. 28 at 8.[3] While that inmate was being moved to a different unit, several other Surenos threatened Welch in the aftermath of the altercation. *Id.* A week later, Welch filed an inmate request form (a "kite") declaring that there was no racial tension in the unit and requesting that the prison return to its standard operating procedure. Def's App. Mot. Summ. J., Ex. C, ECF No. 130 at NDOC0014.[4]

---

[3] Welch's amended complaint (filed while Welch still represented himself pro se), ECF No. 28, was filed with pages out of order (*i.e.*, skipping from section three on page 8 to section five on page 9, then back to section four on page 10). Throughout this order, I reference the digital page numbers which CM/ECF inserts at the top of each page.

[4] Defendants' appendix to its motion for summary judgment was filed incorrectly, without delineation separating exhibits (*see* LR IC 2-2 ("Filer Responsibilities When Electronically Filing Document")). It is also unpaginated. I thus refer to the appendix by the Bates-stamped numbers in the bottom right-hand corner of each page. Counsel is kindly advised to follow this district's local rules in future litigation.

On June 28, 2019, Welch's unit was served spaghetti dinner, and Welch complained that the portion sizes fell below serving guidelines. ECF No. 28 at 8. Welch asked defendant Liggett if he could raise Welch's complaint with a group sergeant or culinary lieutenant. *Id.* Liggett denied Welch's request. *Id.* The next day, Welch was informed (by an unknown third party) that Liggett was telling other inmates that Welch had filed a kite regarding the spaghetti serving sizes. *Id.* at 10.

Two days later, on June 30, 2019, chicken dinner was postponed due to an unrelated event. *Id.* During the delay, Liggett "call[ed] out Welch's name loud" and stated, "I replaced the cold chicken with hot chicken out [of] the warmer." *Id.* Welch asked why Liggett made that statement. *Id.* Liggett responded that he was aware that an inmate had been writing kites about food-related issues. *Id.* at 9. Welch states that Liggett "put[] plaintiff on blast in front of the entire unit . . . as if [Welch] wrote the kites on [Liggett]." *Id.* at 9. Welch alleges that Liggett's actions informally labeled Welch a "snitch." *Id.*

At a meeting on July 8, 2019, Welch spoke to his caseworkers about potentially being transferred to another institution. Ex. D, ECF No. 130 at NDOC0028–30. His stated reason for requesting a transfer was that his life was in danger. *Id.* at NDOC0028. When pressed for specific information regarding the threats, the source of the threats, or anything else that would help caseworkers evaluate the legitimacy of Welch's request, he "accused all present of attempting to turn him into a 'snitch.'" *Id.* When Welch was offered the opportunity to go into protective custody instead of a transfer, Welch "refused to go . . . and stated that he will stay in [General Population] and figure it out himself." *Id.* at NDOC0030.

On July 12, 2019, Welch initiated the instant lawsuit requesting a permanent injunction ordering his transfer to a different institution, compensatory damages, punitive damages, and other relief. ECF No. 1-1 at 14. Welch marked with an "X" to indicate that he had exhausted administrative grievance procedures up to that point, but also noted that "due to the severity of the situation, [he was] seeking mercy from the court" and "did not have time to wait on [the] 45-

day . . . time allotment" for a response to his grievance. *Id.* at 13. Following the initiation of this lawsuit, Welch filed a series of subsequent kites containing general allegations that his safety was at risk and that he had been threatened with sexual assault. *See* ECF No. 129 at 5–6 (describing those kites). Finally, Welch amended his complaint to the operative complaint on March 26, 2020. ECF No. 28.

> ii. *Applicable Administrative Remedies*

Under the PLRA, Welch was required to pursue all available administrative remedies before filing suit. The remedies available to him are promulgated under the title "Nevada Department of Corrections Administrative Regulation 740," or AR 740. Ex. P, ECF No. 130 at NDOC0131–45. AR 740 provides descriptions of the purpose of the regulation, the scope of issues that inmates may grieve, the process to which grievances must adhere, and available remedies for successful grievances. *See generally id.* The provisions of AR 740 were effective "on or after the effective date of [the] AR," which is dated November 20, 2018. *Id.* at NDOC0132.

AR 740 states that its purpose is to "set forth the requirements and procedures of the administrative process that [NDOC] inmates must utilize to resolve addressable grievances and claims including . . . any [] tort or civil rights claim relating to conditions of confinement." *Id.* at NDOC0132. "An inmate whose grievance is denied in its entirety may appeal the grievance to the next level." *Id.* at NDOC0136. The grievance structure is essentially a multi-level dispute resolution mechanism, whereby an inmate must satisfy each level's substantive and procedural requirements before filing a higher-level grievance. *See generally id.* It requires inmates to first pursue resolution via alternative means, "such as discussion with staff or submitting an inmate request form." *Id.* at NDOC0140. Once an inmate has exhausted alternative means, they may file an informal grievance. *Id.* If that fails to provide the requested relief, the inmate may file a first-level grievance, and if that again fails, a second-level grievance. *Id.* at NDOC0142–45. An inmate exhausts their administrative remedies either after a denial of the second-level grievance, or "if the [g]rievance is 'granted' at any level." *Id.* at NDOC0136.

II.         Legal Standard

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable factfinder could find for the nonmoving party, and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Id.* at 250–51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323–24.

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once that party satisfies Federal Rule of Civil Procedure 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. At the summary-judgment stage, "a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial." *Assur. Co. of Am. v. Ironshore Specialty Ins. Co.*, 2015 WL 4579983, at *3 (D. Nev. July 29, 2015) (citing *Anderson*, 477 U.S. at 249). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d

1100, 1103 (9th Cir. 1986).

III. Discussion

    a. *Summary Judgment is Appropriate Because There is No Genuine Dispute that Welch Failed to Exhaust His Administrative Remedies*

The PLRA "requires prisoners to exhaust prison grievance procedures before filing suit." *Jones v. Bock*, 549 U.S. 199, 202 (2007). It states that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other federal law, by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. "Exhaustion subsequent to the filing of suit will not suffice." *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (citing *Booth v. C.O. Churner*, 532 U.S. 731, 738 (2001)). Exhaustion under the PLRA means the inmate must "use all the steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009). The inmate must thus comply "with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).

However, prisoners "need only exhaust 'available' administrative remedies; remedies are not considered 'available' if, for example, prison officials do not provide the required forms to the prisoner or if officials threaten retaliation for filing a grievance." *Draper v. Rosario*, 836 F.3d 1072, 1078 (9th Cir. 2016) (citations omitted). The Ninth Circuit has held that "the defendant bears the burden of proving that an administrative remedy was available to the prisoner and that he failed to exhaust such remedy." *Id.* at 1079 (citing *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc)). "Once the defendant has carried that burden, the prisoner has the burden of production . . . to come forward with evidence showing that there is something in his particular

case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

Defendants allege that administrative remedies were available to Welch and that Welch failed to exhaust those remedies with respect to both of his causes of action. ECF No. 129 at 10–13. Welch responds that defendants have failed to demonstrate that the grievance procedure was available generally or to Welch specifically at the relevant time in question. ECF No. 146 at 6–22.

I find that the administrative remedies were available to Welch; that Welch failed to exhaust them; and that consequently, his amended complaint does not meet the requirements of the PLRA. Both parties agree that the relevant administrative remedy is outlined by AR 740. *Compare* ECF No. 129 at 6–8 (describing the inmate grievance procedure) *with* ECF No. 146 (arguing that, while AR 740 applies, defendants did not demonstrate that it was available to Welch at the relevant times in question). There is no genuine dispute that the remedies available under AR 740 were available to Welch, that Welch knew how to navigate AR 740, and that Welch failed to exhaust his remedies as required by AR 740.

Welch lodges general complaints about the grievance process but makes no argument as to how the "twelve ways that prison staff may reject the grievance on procedural grounds" affect him personally or constitute an abrogation of the available administrative remedies to him. *See* ECF No. 146 at 12–17 (failing to mention Welch once or describing how the various grievance rejections have affected him personally). His conclusory assertion that "NDOC's grievance procedure is not available to inmates in a meaningful way" is unsupported by the evidence before the court. *Id.* at 17.

As for Welch's argument that the grievance procedure was unavailable to him specifically: the regulation had been in use since February 12, 2010. Ex. P, ECF No. 130 at NDOC0132. Welch filed a total of 189 grievances between March 2014 and March 2021, and approximately 120 of those grievances were filed before the initiation of this lawsuit on July 12,

8

2019. *See generally* Inmate Grievance History, ECF No. 147-1. While the outcome of Welch's other grievances has no bearing on the merits of the grievance pertaining to the instant case, Welch's filing of those grievances undercuts his own argument because they demonstrate that Welch indeed had knowledge of how AR 740 worked (as evidenced by his filing of 120 grievances over five years). His familiarity with the grievance process is belied by his admission when he filed this lawsuit that, "due to the severity of the situation . . . [he] did not have time to wait" on the 45-day response time for informal grievances. ECF No. 1-1 at 13. Welch avers that because 96% of his grievances failed, the grievance system operates as a "dead end," establishing a presumption that administrative remedies were effectively unavailable to him. ECF No. 146 at 18–19.

Welch's contention that his grievance success rate is related to the availability of his administrative remedies simply ignores that most of Welch's grievances were found to be meritless and bordered on vexatious. *See generally* ECF No. 147-1. Welch makes no argument that his other grievances (the ones unrelated to the events underlying this case) were improperly denied, nor does he contend that he was prevented from pursuing any of those denied grievances further. *See generally* ECF No. 146.

Welch does argue that his grievances relevant to this lawsuit were improperly denied. *Id.* at 19. He states that he "attempted to grieve Defendant Liggett's retaliation twice and his fears of violence from other inmates once." *Id.* He references grievances filed on July 5, 2019; July 9, 2019; and August 29, 2019.[5] *Id.* at 19–21. Despite the fact that the initial lawsuit was filed on July 15,

---

[5] Welch's response to the motion for summary judgment lists the first grievance as having been filed on June 5, 2019, and the second grievance as having been filed on July 9, 2019. ECF No. 146 at 19. Both of these dates are potentially erroneous, although neither potential error affects my analysis.

As to the June 5 grievance: the NDOC inmate grievance history provided by Welch as an exhibit lists the first grievance related to Liggett having been filed on July 5, 2019, not June 5. ECF No. 147-1 at 63. Supporting my conclusion that Welch's counsel erred is the fact that the incident(s) between Welch and Liggett occurred in late June 2019, which would render any June 5 grievance anachronistic. I thus treat reference to the June 5 grievance as reference to the July 5 grievance.

As to the July 9 grievance: the NDOC inmate grievance history lists the grievance related to failure-to-protect as having been filed on July 15, 2019. *Compare* ECF No. 147-1 at 63 (inmate grievance history

2019, I may consider any administrative remedies exhausted on or before the time that Welch filed his amended complaint on March 26, 2020. *See Saddozai v. Davis*, 35 F.4th 705, 710 (9th Cir. 2022) ("Plaintiff's operative . . . amended complaint is the only relevant pleading for purposes of the PLRA exhaustion analysis."). However, none of the three grievances that Welch filed comply with AR 740's requirements; thus, I conclude that Welch did not adequately exhaust his administrative remedies.

Welch filed his first grievance related to Liggett's retaliation on July 5, 2019, in which he alleged that "Liggett spread a rumor to the unit porters [that Welch] wrote a kite about a food issue factually putting a [] snitch jacket on [him]" and placing his life, safety, and wellbeing in harm's way. Ex. Q, ECF No. 130 at NDOC0163; ECF No. 147-1 at 63. This grievance was filed as a "first level grievance." ECF No. 130 at NDOC0163. Welch appended an incomplete "informal grievance" as a cover sheet to the first level grievance. *Id.* at NDOC0162. However, AR 740 requires inmates to exhaust the informal grievance step prior to filing a first level grievance, which Welch did not do. *See* Ex. P, ECF No. 130 at NDOC0142 (stating that "[f]ailure . . . to submit a proper Informal Grievance form . . . shall constitute abandonment of the inmate's grievance at this, and all subsequent levels" and that "a First Level Grievance that does not comply with procedural guidelines shall be returned to the inmate, with instructions . . ."). NDOC responded to Welch with instructions that his first level grievance was incorrect, directing him to fulfill the requirements of the informal level before pursuing his first-level grievance. *See* ECF No. 147-1 at 63 ("Official Response: Grievances begin at Informal Level. Per AR 740.08.1, at the Informal Level . . ."). Welch subsequently abandoned this grievance, and it thus did not fulfill AR 740's requirements to sufficiently constitute exhaustion. *See id.*

---

describing the grievance as being filed on July 15, 2019) *with* ECF No. 147-3 (the actual grievance sheet, listing July 9 as the signature date). I refer to this grievance as the July 9 grievance.

Welch filed his second grievance related to Liggett's retaliation on August 29, 2019, again at the informal level. Ex. Q, ECF No. 130 at NDOC0148–52. Again, NDOC denied this grievance—albeit with two different rationales. First, because Welch failed to attempt "to resolve the matter by other means such as discussion with staff or submitting an inmate request form." *Id.* at NDOC0153. Second, because Welch apparently filed multiple non-emergency grievances within a week, in contravention of AR 740. *Id.* at NDOC0148. Welch alleges that some disparity in dates makes it "difficult to ascertain" whether he, in fact, submitted more than one grievance that week. ECF No. 146 at 21. However, the inmate grievance history, which Welch himself submitted as an exhibit to his response, does show that Welch filed multiple grievances the week of August 29, 2019. *See* ECF No. 147-1 at 54–57 (describing an informal grievance filed on August 28, 2019; another informal grievance filed on August 26, 2019; and a third informal grievance filed on August 22, 2019). Welch violated AR 740's guidelines regarding the filing of multiple grievances per week and failed to reallege his informal grievance at an appropriate time. He thus failed to exhaust his administrative remedies with respect to the August 29 grievance.

Finally, Welch attempted to grieve his failure-to-protect claim on July 9, 2019. ECF No. 147-3 at 3. NDOC responded to Welch's claim by stating that "[o]n 07/16/2019 you were moved to a segregation unit to address your safety concerns." *Id.* at 2. Welch claims that NDOC failed to respond to him within the 45-day time limit prescribed by AR 740, but moving Welch effectuated a remedy as defined by AR 740. *See* ECF No. 130 at NDOC0138 ("Remedies available for grievances may include . . . resolv[ing] unsafe or unsanitary conditions of confinement" and "protect[ing] inmates from criminal or prohibited acts . . ."). Welch had further administrative remedies available to him if he was dissatisfied with that response, including escalating his informal grievance to a first-level grievance. But he did not escalate that grievance to the first level until February 19, 2021, well after this litigation was underway. ECF No. 147-1 at 63. I cannot consider any of Welch's attempted exhaustion after the filing of his amended complaint

on March 26, 2020. *See McKinney*, 311 F.3d at 1199 ("Exhaustion subsequent to the filing of suit will not suffice."). Consequently, Welch failed to timely exhaust his administrative remedies with respect to any of the three grievances relevant to the claims in this lawsuit. I therefore grant defendants summary judgment on both of Welch's remaining causes of action.

      b. *Dissolution of the Injunction is Appropriate Due to Changed Circumstances*

Courts "retain[] the power to modify the terms of [an] injunction in the event that changed circumstances require it." *U.S. v. Oregon*, 769 F.2d 1410, 1416 (9th Cir. 1985). I based my prior order on the likelihood of Welch suffering irreparable harm absent an injunction. ECF No. 135 at 7–8. I note that circumstances have now changed, as Welch has vindicated his right of meaningful access to his attorneys in the habeas case. *See* Order, *Welch v. Williams*, ECF No. 76. My concern that Welch would "likely suffer serious and irreparable harm if not permitted to confer with counsel" given the "difficulties of federal habeas relief, compounded by the gravity of every mistake in the habeas context" (ECF No. 135 at 8), has thus been alleviated. I vacate my order at ECF No. 135 and dissolve the injunctive relief ordered therein.

      c. *Defendants' Motion for Reconsideration is Now Moot*

Defendants move to reconsider my order issuing injunctive relief. ECF No. 139. Because I vacate my order and dissolve the injunction on other grounds, defendants have succeeded in obtaining the relief they seek via the motion. As a result, my present decision renders defendants' motion moot.

## IV. Conclusion

IT IS HEREBY ORDERED that my prior Order **[ECF No. 135]** is **VACATED**. I order the injunctive relief described therein dissolved.

IT IS FURTHER ORDERED that defendants' motion for reconsideration **[ECF No. 139]** is **DENIED** as moot.

IT IS FURTHER ORDERED that defendants' motion for summary judgment **[ECF No. 129]** is **GRANTED**. The Clerk of Court is instructed to enter judgment accordingly and CLOSE THIS CASE.

DATED: January 11, 2023

_____
Cristina D. Silva
United States District Judge